PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,
                              *Petitioner,*

                v.

B. A. MULLICAN LUMBER AND
MANUFACTURING COMPANY,
                              *Respondent.*

No. 07-2028

B. A. MULLICAN LUMBER AND
MANUFACTURING COMPANY
                              *Petitioner,*

                v.

NATIONAL LABOR RELATIONS BOARD,
                              *Respondent.*

No. 07-2063

On Application for Enforcement and Cross-Petition for Review of
an Order of the National Labor Relations Board.
(11-CA-19451; 11-CA-19547)

Argued: May 14, 2008

Decided: July 25, 2008

Before WILLIAMS, Chief Judge, NIEMEYER, Circuit Judge, and
Alexander WILLIAMS, Jr., United States District Judge for the
District of Maryland, sitting by designation.

Application for enforcement denied and cross-petition for review
granted by published opinion. Judge Niemeyer wrote the opinion, in
which Chief Judge Williams and District Judge Williams joined.

**COUNSEL**

**ARGUED:** Elizabeth Brooks Scherer, SMITH & MOORE, LLP, Raleigh, North Carolina, for B. A. Mullican Lumber and Manufacturing Company. William M. Bernstein, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board. **ON BRIEF:** George J. Oliver, SMITH & MOORE, LLP, Raleigh, North Carolina, for B. A. Mullican Lumber and Manufacturing Company. Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, Jill A. Griffin, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board.

---

**OPINION**

NIEMEYER, Circuit Judge:

After production employees of B.A. Mullican Lumber and Manufacturing Company ("Mullican Lumber") filed a petition with the National Labor Relations Board ("NLRB" or the "Board") to decertify representation by the United Mine Workers of America (the "Union"), Mullican Lumber received information from the employees that the decertification petition revealed that a majority of the employees no longer supported the Union. Based on this information, Mullican Lumber withdrew recognition of the Union. On the Union's subsequent unfair labor practice charges, the General Counsel of the Board filed a complaint against Mullican Lumber, alleging that the evidence Mullican Lumber relied on to withdraw recognition of the Union was insufficient. Even though neither the Union nor the General Counsel of the Board challenged Mullican Lumber's evidence at the hearing before the administrative law judge, nor ever denied that a majority of the employees signed the petition to decertify the Union, the Board agreed with the General Counsel and held that Mullican Lumber violated § 8(a)(5) of the National Labor Relations Act in withdrawing recognition of the Union. Accordingly, the Board ordered that Mullican Lumber recognize the Union and bargain with it as the exclusive collective bargaining representative of its production employees.

On the Board's application for enforcement and Mullican Lumber's cross-petition for review, we conclude that Mullican Lumber advanced substantial objective evidence, consistent with the standard articulated in *Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717, 725 (2001), and sufficient to demonstrate that, more likely than not, the production employees no longer supported the Union. Because the General Counsel of the Board did not challenge or contradict the evidence, we deny the Board's application for enforcement and grant Mullican Lumber's cross-petition for review.

I

United Mine Workers of America was certified on August 24, 2000, as the exclusive collective bargaining agent for the production employees of Mullican Lumber at its plant in Norton, Virginia. Thereafter, the Union and Mullican Lumber engaged in contract negotiations for almost a year.

In August 2001, however, a number of Mullican Lumber production employees no longer wished to be represented by the Union, and Charles Dixon, the Union's lead negotiator, told Charles Tuck, Mullican Lumber's lead negotiator, that the Company's employees were circulating a petition for decertification. The employees actually filed their decertification petition with the NLRB's Regional Office on September 17, 2001, and the NLRB so notified Mullican Lumber. But Mullican Lumber did not then learn whether the petition was supported by a majority of production employees or only the 30% required by Board rule for a decertification election, and it did not make inquiry of the number signing the petition, as it understood that to do so would have been unlawful. *See NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 144-45 (4th Cir. 1983).

Because Mullican Lumber did not know whether the petition was signed by a majority of the employees, it continued its efforts to reach agreement on a collective bargaining agreement with the Union. The Union and the Company had last met in a bargaining session on September 12, 2001, at which time agreement had been reached on all terms except five Addendums. The Union had apparently signed Addendums A, B, and C but had refused to sign Addendums D and E.

On the day after the employees filed their decertification petition, the Union called a meeting of the production employees during which the employees ratified a purported collective bargaining agreement. The employees were presented all the terms that had been agreed to on September 12, 2001, but not Addendums D and E. On the following day, September 19, 2001, the Union sent a letter to Mullican Lumber stating that the collective bargaining agreement had been ratified and that it was the Union's understanding that the parties had actually reached agreement on September 12, 2001, so that the ratification was retroactive to that date. The September 12 date was significant because it came before the employees had filed their decertification petition, and under the "contract-bar rule," no challenges to the Union's majority status could be entertained for the life of a valid collective bargaining agreement. *See NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 290 n.12 (1972); *Gen'l Cable Corp.*, 139 N.L.R.B. 1123 (1962). Thus, if agreement had been reached on September 12, the decertification petition filed on September 17 would have been nullified.

In response to the Union's letter, Mullican Lumber denied that the parties had reached agreement on September 12 and sought to continue bargaining with the Union. The Company later wrote the Union, stating that during the negotiations on September 12, 2001, "the parties reached a proposed tentative agreement on all issues, except five Addendums which were presented to the Union as a complete package to reach a final settlement on the contract. Although you executed Addendums A, B and C on behalf of the Union, you refused to sign Addendums D and E." The Company's letter also pointed out that Addendums D and E had "never been submitted to the [C]ompany's employees for a ratification vote and, until such time as the [C]ompany approves them and there is a ratification vote on all agreed upon items, in accordance with the Ground Rules, we have no agreement." The Company concluded by saying that it was requesting the Union to "meet and bargain over these issues."

The Union refused to bargain. Instead, it filed unfair labor practice charges against Mullican Lumber, claiming among other things that Mullican Lumber and the Union had reached an agreement on September 12, 2001. In the months that followed, the Union continued to file additional unfair labor practice charges, which were recognized

as "blocking charges" because they blocked the Board's processing of the employees' decertification petition under the Board's policy of holding in abeyance such petitions when there are pending unfair labor practice charges that would have a tendency to interfere with the free choice of employees in an election. Between September 18, 2001, and June 21, 2002, the Union filed approximately 10 blocking charges against Mullican Lumber, alleging more than 20 separate unfair labor practices. Ultimately all of the charges, including the Union's assertion that the parties had reached a final agreement on contract terms on September 12, 2001, were withdrawn by the Union or dismissed by the Board.

During the period after the employees filed their decertification petition, various employees began to inform the Company on an unsolicited basis that the Union had lost majority support. Among those employees were James Doug Carroll, David Long, Shayne Stapleton, and Jeff Mathison, all of whom specifically told Mullican Lumber Plant Manager Ricky Allen Burchfield that the Union did not have majority support. Burchfield also heard "feedback" from unnamed employees that only four or five employees were attending Union meetings and that after the Union's president ceased to be an employee in November 2001, there had been no election for a new president, even though several months had passed. On May 21, 2002, James Carroll, the employee who prepared and filed the decertification petition with the NLRB, sent the Company a letter, reiterating the facts of the petition, as follows:

> This is to inform you that a majority of the employees of B.A. Mullican Lumber & Mfg. Co., Inc. no longer want to be represented by the United Mine Workers of America.

> 114 out of 220 employees have signed decertification slips noting they no longer want to be represented by the United Mine Workers of America. These 114 signatures have been filed with the National Labor Relations Board. Therefore we request that Management deal directly with the employees of B.A. Mullican Lumber & Mfg. Co., Inc. instead of the United Mine Workers of America.

Carroll sent a copy of the letter to the NLRB.

Following receipt of this letter, Mullican Lumber formally wrote the Union on June 28, 2002, stating that it was withdrawing recognition of the Union as the exclusive collective bargaining representative of the employees. The letter explained that Mullican Lumber had received "written notification . . . that 114 out of 220 of our employees have signed for decertification and . . . based upon this objective evidence . . . we withdraw recognition of the [Union]." The Union did not dispute or challenge the facts that Mullican Lumber asserted, but it did file additional unfair labor practice charges with the Board. Because the Union's charges were again "blocking charges," they prevented the Board from acting on the employees' decertification petition. Indeed, the decertification petition remains pending with the Board, unresolved now for over six years.

Acting on the Union's charges, the Board's General Counsel issued a consolidated complaint against Mullican Lumber charging that (1) by failing to execute a written collective bargaining agreement with the Union on or about April 2, 2002, and (2) by withdrawing recognition from the Union on June 28, 2002, the Company violated §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), 158(a)(5).

After a trial on the charges before an administrative law judge ("ALJ"), the ALJ found that the parties had not reached agreement on all essential terms of the collective bargaining agreement and that therefore Mullican Lumber had acted lawfully when it refused to execute the purported bargaining agreement. But the ALJ also found that Mullican Lumber failed to present "objective evidence of loss of majority status" and therefore violated the National Labor Relations Act when it withdrew recognition of the Union. The ALJ explained that the numerous oral statements made by employees were hearsay, and he discounted Carroll's May 21 letter because "there is no probative evidence that each of those 114 employees was in the unit or employed on June 28 when the Respondent withdrew recognition. . . . There is no evidence that the Respondent identified the employees who had purportedly signed decertification slips, determined that each employee was in the unit, or sought to authenticate their signatures." The ALJ thus concluded that Mullican Lumber had not "established by objective evidence that a majority of its unit employees had ceased to support the Union" and therefore had committed an unfair labor

practice in withdrawing recognition of the Union, in violation of § 8(a)(5) of the National Labor Relations Act.

Relying on the ALJ's conclusions, the Board affirmed the ALJ's ruling (after a delay of more than four years) and entered an order dated July 31, 2007, directing, among other things, that Mullican Lumber withdraw its June 28, 2002 letter, recognize the Union, and bargain in good faith with the Union as the exclusive collective bargaining representative of its production employees.

The General Counsel of the Board filed this application for enforcement in our court, and Mullican Lumber filed a cross-petition for review. In its response to the application for enforcement and in support of its cross-petition for review, Mullican Lumber contends that it was justified in withdrawing recognition of the Union, based on the evidence it had. It also challenges, as an inappropriate remedy, the Board's affirmative bargaining order.

On the application and cross-petition, we review the NLRB's findings to determine if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e), (f); *NLRB v. Transpersonnel, Inc.*, 349 F.3d 175, 179 (4th Cir. 2003).

II

The General Counsel contends that Mullican Lumber "failed to meet its burden of showing that the Union had, in fact, lost the support of the majority of the employees on the day it withdrew recognition," arguing that the evidence presented was "insufficient." "The evidence relied upon by the Company consists of unverified hearsay regarding the employees' union sentiment, a 9-month old employee decertification petition, and no objective evidence of the number of employees in the unit on the date of withdrawal." Because Mullican Lumber's evidence was insufficient, the General Counsel maintains, the presumption of majority support survived and the General Counsel was never required to present any contrary evidence to show majority support. *See Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717, 725 & n.49 (2001).

Mullican Lumber contends that it did in fact present objective evidence that the Union had lost majority support and, because the General Counsel did not present any evidence — direct, rebuttal, or otherwise — on the issue, the only evidence in the record supports the conclusion that the Union had lost majority status. The Company adds:

> Compounding this error, the Board allowed the General Counsel to prevail on its withdrawal of recognition claim even though the General Counsel withheld the decertification slips that would have conclusively established whether the Union lacked majority support at the time Mullican [Lumber] withdrew recognition. These decertification slips were in the exclusive custody and control of the General Counsel who chose not to introduce them or offer any evidence regarding them at the hearing.

The parties' assertions thus present the issue of whether Mullican Lumber presented sufficient evidence demonstrating that the Union had lost majority support. The parties agree that the controlling evidentiary standard was defined by the Board's opinion in *Levitz*.

*Levitz* held that "an employer may rebut the continuing presumption of an incumbent union's majority status, and unilaterally withdraw recognition, only on a showing that the union has, in fact, lost the support of a majority of the employees in the bargaining unit." 333 N.L.R.B. at 725. Under *Levitz*, the employer must prove loss of majority status "by a preponderance of the evidence," *id.*, and to make that showing, the employer must present "*objective evidence* that the union has lost majority support," *id.* (emphasis added); *see also id.* at 723 ("some objective evidence"). In articulating this objective-evidence standard, *Levitz* overruled the prior subjective standard by which an employer could withdraw recognition from a union if the employer had a "good-faith doubt" as to whether the union continued to enjoy majority support. *See id.* at 721; *Transpersonnel*, 349 F.3d at 187.

Justifying the new standard, the Board in *Levitz* pointed out:

> Employers are not without access to evidence on this issue. For example, the Respondent here was presented with the

> *unsolicited* views of employees regarding representation matters. Indeed, had the union not asserted that it had contrary evidence, the Respondent would have had a good case, based on the petition it received from a majority of the unit employees, that the Union had, in fact, lost majority support.

333 N.L.R.B. at 725 (emphasis added). To apply the new standard, the Board anticipated a burden-shifting scheme, explaining that once an employer presents objective evidence demonstrating the union's loss of majority status, the General Counsel may rebut the evidence in order to shift the burden back to the employer ultimately to make its showing by a preponderance of the evidence. If the General Counsel presents nothing in rebuttal, however, the employer will ordinarily prevail. *See id.* at 725 n.49.

"Objective" evidence does not refer to the "force" of the evidence, but rather its "source." *See Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 367-68 n.2 (1998). As the Supreme Court explained, "[r]equiring the employer's doubt to be based on 'objective' considerations reinforces the requirement that the doubt be 'reasonable,' imposing on the employer the burden of showing that it was supported by evidence *external to the employer's own (subjective) impressions.*" *Id.* at 368 n.2 (emphasis added). While the reasonable-doubt standard referred to in *Allentown Mack* has now been overruled by *Levitz*, the definition of "objective" has not.

In this case, Mullican Lumber presented the following evidence in support of its claim that the Union had lost majority support:

*First*, it received information from the Union negotiator that the production employees were circulating a decertification petition, and from the NLRB that the petition had in fact been filed with the NLRB on September 17, 2001, indicating under NLRB rules that at least 30% of the employees no longer supported the Union.

*Second*, at least four named employees in the bargaining unit, inquiring when decertification would proceed, made statements to Mullican Lumber's plant manager that the Union no longer had the support of a majority of the employees.

*Third*, an additional number of unnamed production employees told Mullican Lumber's plant manager that a majority of the Company's production employees did not support the Union and asked why decertification had not proceeded.

*Fourth*, unnamed employees advised Mullican Lumber's plant manager that only four or five employees attended Union meetings and the members had for months not elected a president after the former president left his employment at the plant.

*Fifth*, James Carroll, the production employee who actually prepared and filed the decertification petition with the NLRB and thereby had first-hand knowledge of it, wrote Mullican Lumber in May 2002, informing the Company specifically that a majority of the production employees "no longer want[ed] to be represented by the United Mine Workers of America" and that "114 out of 220 employees have signed decertification slips noting they no longer want to be represented by the United Mine Workers of America."

*Sixth*, Mullican Lumber recognized that, on the day after the decertification petition was filed, the Union sought retroactively to ratify an incompletely negotiated collective bargaining agreement in an effort to nullify the decertification petition. In addition, the Union filed ongoing "blocking charges" that had the well-understood effect of delaying the Board's ability to consider the decertification petition.

And *seventh*, the Union never disputed Mullican Lumber's assertion that the Union lost majority support.

The ALJ held that this evidence was not sufficient to demonstrate loss of majority support largely because it was not "objective" evidence or because it constituted hearsay, albeit unobjected-to hearsay. Specifically, on the evidence about attendance at Union meetings, the ALJ found that it did not address a loss of majority status. On the evidence of oral reports from individual employees about the loss of majority status, the ALJ found it to be hearsay. And on Carroll's letter to Mullican Lumber, the ALJ found that the evidence was inadequate or uncorroborated. He stated:

Although Carroll's letter states that 114 of 220 employees had signed decertification slips, there is no probative evidence that each of those 114 employees was in the unit or employed on June 28 when the Respondent withdrew recognition. No representative of the Respondent ever saw, or requested to see, the "decertification slips" to which Carroll referred in his letter. There is no evidence that the Respondent identified the employees who had purportedly signed decertification slips, determined that each employee was in the unit, or sought to authenticate their signatures.

The ALJ's opinion did not, however, address why Mullican Lumber's evidence was not objective or why hearsay could not be considered as probative evidence, especially when the General Counsel had never objected to the evidence. In fact, most of Mullican Lumber's evidence was precisely of the type considered "objective" and probative in *Levitz*.

In *Levitz*, the employer received a petition bearing what it believed to be signatures of a majority of bargaining unit employees, stating that they no longer wanted to be represented by the union. Responding to that evidence, the employer informed the union that it would be withdrawing recognition of the union. 333 N.L.R.B. at 719. The union in *Levitz*, however, disputed the employer's allegation, stating, "[t]o the contrary, we are in possession of objective evidence that Local 101 *does* represent a majority of the bargaining unit employees . . . . The Union is ready at any time to demonstrate this fact to you." *Id.* While noting that the burden of demonstrating the loss of majority support fell on the employer, the Board in *Levitz* also suggested that, without the union's assertion of contrary evidence, the employer "would have had a good case":

> We think it entirely appropriate to place the burden of proof on employers to show actual loss of majority support. . . . Employers are not without access to evidence on this issue. For example, the Respondent here was presented with the *unsolicited views of employees* regarding representation matters. Indeed, had the Union not asserted that it had contrary evidence, the Respondent would have had a good case, based on the petition it received from a majority of the unit

employees, *that the Union had, in fact, lost majority sup-port.*

*Id.* at 725 (emphasis added) (footnote omitted). In a footnote, the Board elaborated, stating that "[a]n employer who presents evidence that, at the time it withdrew recognition, the union had lost majority support should ordinarily prevail in an 8(a)(5) case if the General Counsel does not come forward with evidence rebutting the employer's evidence." *Id.* at 725 n.49. However, "[i]f the General Counsel does present such evidence, then the burden remains on the employer to establish loss of majority support by a preponderance of all the evidence." *Id.*

In this case, Mullican Lumber presented evidence of the type recognized in *Levitz* to demonstrate that the Union lost its majority status. Most analogous was Carroll's letter, in which Carroll, who had prepared and filed the decertification petition with the Board and therefore had personal knowledge of its contents, stated that the petition revealed a loss of majority support. Yet, the General Counsel did not present any rebuttal evidence, nor make *any* arguments challenging or calling into question the evidence presented by Mullican Lumber. The General Counsel's case, instead, focused unsuccessfully on proving its charge that Mullican Lumber unlawfully refused to execute the collective bargaining agreement. As a consequence, the ALJ's opinion could only speculate as to the arguments that the General Counsel *could have made* in response to Mullican Lumber's evidence on the lack of majority support — such as that Mullican Lumber might have had more than 220 production employees or that some of the signatures on the decertification petitions might not have been valid. But, the General Counsel *neither made these arguments nor presented any evidence to support them.* Moreover, the General Counsel never even challenged the authenticity or accuracy of Carroll's letter or the other evidence Mullican Lumber presented. Indeed, it was the General Counsel who moved Carroll's letter into evidence. Had the General Counsel doubted the genuineness of Carroll's letter or any other evidence presented by Mullican Lumber, he could have called it into question before the ALJ and the parties could have conducted further investigation and inquiry into the circumstances.

In short, neither the Union nor the General Counsel "asserted that it had contrary evidence," and therefore, under *Levitz*, we conclude

that Mullican Lumber "had a good case," based on the evidence it presented. *See Levitz*, 333 N.L.R.B. at 725. The employees' statements, and particularly the letter from Carroll, were the best type of evidence that an employer could have presented about the loss of majority support, in light of the Board's policies prohibiting an employer's involvement in decertification efforts and insuring confidentiality of decertification petition information. Without the General Counsel making some argument or presenting some evidence to contradict Mullican Lumber's assertions — in support of which the Company had presented evidence — we are not free to speculate, as the ALJ did, about possible counter-arguments that were not made and that were unsupported by any offer of proof.

In short, we are left with circumstances that fit precisely into the scenario contemplated by *Levitz* — the employer "present[ed] evidence that, at the time it withdrew recognition, the union had lost majority support," and therefore, the employer "should ordinarily prevail . . . [because] the General Counsel [did] not come forward with evidence rebutting the employer's evidence." *Id.* at 725 n.49.

Before us, the General Counsel now argues, *for the first time in this case*, that we should enforce the Board's order because, as the ALJ found, Mullican Lumber's evidence was not "objective" and constituted hearsay. On his argument that the evidence was not "objective," the General Counsel misconstrues what objective evidence is, focusing on its nature as hearsay or its weight. But as the Supreme Court observed in *Allentown Mack*, objective evidence is evidence "external to the employer's own (*subjective*) impressions." 522 U.S. at 368 n.2. That is precisely the type of evidence Mullican Lumber presented in this case. The unsolicited statements and letters from employees, stating that a majority of them no longer supported the Union, were "external to [Mullican Lumber's] own (*subjective*) impressions." And the letter from Carroll was not only unsolicited but was written by the very person who filed the decertification petition with the NLRB. We hold that this evidence meets the "objective" requirement. *See Levitz*, 333 N.L.R.B. at 725 (considering as persuasive, and therefore necessarily objective evidence, the "unsolicited views of employees regarding representation matters").

With respect to the General Counsel's argument that some of the evidence was hearsay, the General Counsel is not now in a position

to say enough to exclude the evidence. The simple fact that evidence might be hearsay does not automatically lead to its exclusion. Hearsay evidence might be admissible under an exception to the hearsay rule or because it has circumstantial guarantees of trustworthiness. Moreover, when an objection is made, the proponent of the evidence might be able to avoid the rule by different questioning or by offering additional evidence. Thus, for good reason, we cannot accept a posthearing argument that evidence admitted without objection may not be considered because it was hearsay. In this case, not only did the General Counsel not object to Mullican Lumber's evidence, he facilitated the admission of some of the evidence that he now argues cannot be considered because it was hearsay. "[W]hen evidence of that character [hearsay] is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible." *Diaz v. United States*, 223 U.S. 442, 450 (1912).

Consistent with *Diaz*, we have given employee reports regarding union loss of majority status their natural probative value, despite their hearsay nature. *See Transpersonnel*, 349 F.3d at 187-88 (recognizing the probative value of objective and reliable hearsay evidence). In *Transpersonnel*, we said:

> We conclude, however, that Transpersonnel had, before May 9, other objective and reliable evidence that Emerson did not support the Union. Hefner, Emerson's driving partner for many years, specifically told Transpersonnel before May 9 that he wanted nothing to do with union representation and neither did Emerson.

*Id.* at 188. The evidence accepted in *Transpersonnel*, and indeed in *Levitz*, are the same types of evidence presented by Mullican Lumber — statements received from its employees, who were members of the bargaining unit, who presumably voted, and who presented this information in an effort to accelerate the decertification process.

The General Counsel also argues that in cases applying the *Levitz* standard, the probative value of hearsay evidence should be slight. We need not, however, decide the relevant weight of the evidence presented by Mullican Lumber — except to conclude that it was sufficiently substantial to be probative — inasmuch as the General Coun-

sel offered *no* contrary evidence. Indeed, the General Counsel never even objected to Mullican Lumber's evidence.

Finally, the General Counsel argues that the Company could have made efforts to corroborate better the evidence that it had, stating in his brief:

> [Plant Manager] Burchfield admitted that he never saw the [decertification] "slips" mentioned in the letter and did not ask Carroll to provide him with copies of them. Moreover, the Company "made no effort to verify the statements in Carroll's letter." [Citing to the ALJ's opinion].

Although these points may be true, they do not address the evidence that was in fact admitted. Moreover, they ignore established Board policy that prohibits the employer from asking its employees for decertification slips. *See Air Prods. & Chems.*, 717 F.2d at 144-45 (holding that questioning of employees about number of union cards signed, placing employees in a position of having to admit or deny union support, and participating in anti-union petition were all unfair labor practices); *Madeira Nursing Ctr., Inc. v. NLRB*, 615 F.2d 728, 731 (6th Cir. 1980) (holding that authorization cards are privileged from disclosure to employer); *Heritage Hall*, 333 N.L.R.B. 458, 458 n.4 (2001) (stating employer polling of employees by secret ballot while unfair labor practice charges are blocking Board-certified election is unlawful); *Struksnes Constr. Co.*, 165 N.L.R.B. 1062, 1063 (1967) (same). If Mullican Lumber had made the inquiries that the General Counsel now suggests it should have, the Union would surely have filed additional unfair labor practice charges against the Company.

In short, Mullican Lumber presented objective evidence demonstrating that, more likely than not (the preponderance standard as required by *Levitz*), the Union had lost majority status, and there is no substantial evidence to conclude otherwise. Accordingly, we conclude that there is no substantial evidence to support the Board's conclusion that Mullican Lumber violated § 8(a)(5) in withdrawing recognition of the Union.

III

Mullican Lumber contends that the Board's application for enforcement of its order should be denied based on a negative inference to be drawn from the Board's failure and refusal to disclose the number of decertification slips which it had exclusively in its possession. *See NLRB v. New Assocs.*, 35 F.3d 828, 834 (3d Cir. 1994) (denying enforcement of an NLRB order finding a violation of § 8(a)(5) when the "NLRB possessed the data which would have enabled Hospitality Care to make an informed decision on whether the Union had lost majority support"). Shortly after the Union filed its first charges, Mullican Lumber requested from the Board the percentage of employees who had filed decertification slips, but was denied this information, and the General Counsel did not present it as evidence to rebut Mullican Lumber's case. Mullican Lumber asserts that "[a]llowing the General Counsel to withhold evidence that the employees no longer support the [U]nion is inconsistent with the [National Labor Relations] Act's purpose of promoting employee free choice." In addition, Mullican Lumber argues that "the General Counsel cannot simultaneously contend that the employer acted unlawfully in withdrawing recognition when the General Counsel possesses the evidence that will conclusively prove, or disprove, the employer's defense to the charge — *i.e.*, whether a majority of employees had filed decertification slips."

The Board's response rests on its assertion that the employer, not the General Counsel, bears the burden of demonstrating a loss of majority support with objective evidence. It also argues that Mullican Lumber's request for the percentage of employees who had filed for decertification, made *after* it withdrew recognition of the Union, was irrelevant to providing a basis for Mullican Lumber's decision.

We agree with the General Counsel that he was not required to offer evidence into the record but was entitled to remain silent, as he did, and to rest on an argument that the employer failed to meet its burden of proof. We also agree that the decertification information requested *after* the Company withdrew recognition of the Union was irrelevant to demonstrating or justifying the Company's "state of mind" when it made the decision to withdraw recognition. But these positions do not address the Board's larger responsibilities under the

National Labor Relations Act to assure that the employees' choice is given effect and under the objective standard for evidence established by *Levitz*.

"The fundamental policies of the [National Labor Relations] Act are to protect employees' right to choose or reject collective-bargaining representatives, to encourage collective bargaining, and to promote stability in bargaining relationships." *Levitz*, 333 N.L.R.B. at 723. As § 7 of the Act states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities . . . .*

29 U.S.C. § 157 (emphasis added). And § 8(a)(5) of the Act makes it unlawful for an employer to refuse to bargain with the representative elected by a majority of his employees in the bargaining unit. Obversely, § 8(a)(2) of the Act makes it unlawful for an employer to recognize and bargain with a representative who lacks majority support. *See Levitz*, 333 N.L.R.B. at 720, 724. Thus the Board must be guided by the Act's mandate *to give effect to employees' choice*, whether it is the choice to be represented by a union, or not.

Prior to *Levitz*, an employer could withdraw recognition of a union if it had a "good-faith doubt" about the union's majority support. *See Celanese Corp. of Am.*, 95 N.L.R.B. 664, 672 (1951). But under *Levitz*, the Board moved to an objective test to discover whether the union *actually* lost majority support; it thus became irrelevant to inquire into the employer's state of mind. The *Levitz* standard focuses on the Act's policy of promoting employee choice by determining *actual* employee desires, rather than employers' *beliefs* about employee desires, by asking whether there was *in fact* majority support for the union at the time the employer withdrew recognition, *regardless of what the employer believed*. The *Levitz* standard therefore introduced a truth-seeking test.

Thus, "[i]f a majority of the unit employees present evidence that they no longer support their union, their employer may lawfully withdraw recognition," and this is so regardless of what the employer knew at the time. *Levitz*, 333 N.L.R.B. at 724. Accordingly, the General Counsel's argument in this case — that the evidence contained in the decertification slips he possessed was irrelevant to what the employer knew when it withdrew recognition — is simply obsolete in light of *Levitz*. *Levitz* stated the principles on an objective basis, focusing on the *actual* choice of employees. Thus the Board in *Levitz* stated, "if a union actually has lost majority support, the employer must cease recognizing it, both to give effect to the employees' free choice and to avoid violating Section 8(a)(2) by continuing to recognize a minority union." *Id.* at 724.

While the new standard of *Levitz* does not relieve the employer of presenting objective evidence as to the actual loss of majority support, it does impose on the General Counsel additional duties, ethical and statutory, when the issue is presented to the Board and the courts. It would be improper for the General Counsel, if he had in his possession evidence that a union no longer had majority support, to urge a court of appeals to enforce a bargaining order against the employer requiring the employer to bargain with a union representing only a minority of the employees. In doing so, he would be seeking unlawful relief that would not only erode the fundamental policies of the Act but would also violate his duties under the Act. The Supreme Court has noted that the Board's principal duty is to advance the congressional policy for industrial peace accomplished by "promot[ing] stability in collective-bargaining relationships, *without impairing the free choice of employees*." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 38 (1987) (emphasis added) (internal quotation marks omitted) (citing *Terrell Machine Co.*, 173 N.L.R.B. 1480 (1969), *enf'd*, 427 F.2d 1088 (4th Cir. 1970), *cert. denied*, 398 U.S. 929 (1970); *accord Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 785-86, 790 (1996). Thus, the Board's duty to enforce the Act translates into a duty to act in good faith in promoting the will of *employees* — who, explicitly, "shall also have the right to refrain from any or all of such [labor organization or union] activities." 29 U.S.C. § 157.

It follows that if the Board has evidence from which it knows that a majority of the employees do not want union representation, it must

either disclose the information to the employer or limit its conduct in seeking enforcement from the courts. Thus, if the Board chooses not to disclose the information, regardless of the quality of the employer's case, it may not seek orders from courts of appeals that it knows would violate the Act. In this case, the General Counsel would not be free to seek enforcement of an order requiring Mullican Lumber to bargain with the Union if it knows that the Union has only minority support. Stated otherwise, under the objective standard for determining the free choice of employees, the Board is not free to rely on deficiencies in the employer's evidence to enter a bargaining order when it has the evidence exclusively within its possession that a majority of the employees, in fact, have chosen *not* to be represented by the Union. On the other hand, if the employer fails in its burden of proof and the Board does not know the will of a majority of the employees, the Board may seek enforcement of an order against the employer based simply on the employer's failure to overcome the presumption of majority status.

At oral argument, we invited the Board to provide the court with the information about the percentage of employees who had signed decertification slips in this case, but the Board has respectfully declined to do so, arguing that we are not free to expand the record at this level. Even though that position is legitimate, we remind the Board that it may not appropriately seek a bargaining order from this court that it knows is contrary to the will of a majority of the employees. But inasmuch as we have concluded that in the circumstances of this case Mullican Lumber met its burden in the absence of evidence from the General Counsel, we need not order a remand to allow the Board to satisfy itself that it is properly carrying out its duty under the National Labor Relations Act to see that the free choice of the unit employees is not being frustrated. *Cf. New Associates*, 35 F.3d at 834-35 (where the employer had not yet met its evidentiary burden, ordering remand to allow the Board to decide whether to disclose decertification information in its possession).

For the reasons given, the application of the Board for enforcement of its July 31, 2007 order is denied, and Mullican Lumber's cross-petition for review is granted.

*IT IS SO ORDERED*.