WAGON WHEEL BOWL,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WAGON WHEEL BOWL,
INC., Respondent.

Nos. 93–70404, 93–70515.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1994.

Decided Jan. 30, 1995.

Jon G. Miller and Wayne A. Hersh, Finkle, Hersh & Stoll, Irvine, CA, for petitioner-cross-respondent.

John E. Arbab and William M. Bernstein, N.L.R.B., Washington, DC, for respondent-cross-petitioner.

Petition for Review and Cross–Application for Enforcement of an Order of the National Labor Relations Board.

Before: CANBY, LEAVY, and T.G. NELSON, Circuit Judges.

LEAVY, Circuit Judge.

Wagon Wheel Bowl, Inc. ("Company") petitions for review of the National Labor Relations Board's ("Board" or "NLRB") decision and order finding that the Company committed unfair labor practices by unlawfully polling its union employees and by other actions taken by the Company after the polling. The Company argues that the Board applied the wrong legal standard in determining the lawfulness of the Company's poll and that, under the correct standard, sufficient evidence supported the Company's decision to poll. The Board applies for enforcement of its order.

We deny the petition for review and grant enforcement of the order.

## FACTS AND PRIOR PROCEEDINGS[1]

Wagon Wheel Bowl, Inc., is a small California corporation operating a bowling alley and bar. From 1970 until the end of January 1991, the Company recognized the Culinary Alliance & Bartenders Union, Local 498, affiliated with Hotel Employees and Restaurant Employees International Union ("Union") as the exclusive collective bargaining representative for its bartenders, waiters, and waitresses. The number of union employees always remained around ten.

Following the expiration of their last collective bargaining agreement, the Company and Union entered into negotiations. These negotiations continued through the end of 1990 but resulted in no agreement.

On January 23, 1991, the Company notified the Union that it would conduct a "*Struksnes* Poll"[2] to test employee support for the Union. The Company based its decision to poll on a series of employee statements made to or in the presence of Wagon Wheel's president, Edwin Boyd. The Board and Union have stipulated to those statements:

(1) At one time or another, an unknown number of Unit employees in the bar department complained to Edwin Boyd about the inadequacy of the health insurance plan provided for in the Agreement and informed Boyd that they had not been visited by a Union representative in many years.

(2) J. Ezell, a bartender and Unit employee, was bitten by a spider causing her to exhaust the limits of her Agreement-provided health insurance coverage. After exhausting her coverage, she asked Boyd why the employees could not get a better health insurance plan. Boyd responded that it was because the Unit employees were represented by the Union, which was providing their current health insurance coverage.

(3) Either Ezell or H. Frees, also a bartender and Unit employee, asked Boyd how they could get out of the Union so they could get a health insurance plan similar to the plan being provided to [the Company's] non-Unit employees. At that time, Frees stated to Boyd that, because he (Frees) was a part-time employee, he could not obtain enough work hours to qualify for the Agreement's health insurance plan. Frees stated that in his 15 years of employment with [the Company], he had never seen a Union representative visit Respondent's premises.

(4) Boyd has overheard Unit employees talking among themselves, asking why they are paying dues if a Union representative is never around, and asking what the Union is doing for the employees. Specifically, Boyd has overheard Thompson, a bartender and Unit employee, state to other Unit employees her dissatisfaction with the Union, asked what the Union is doing for the employees, and complained that the Union is never around. On another occasion, Boyd overheard Hunt, a Unit employee, state to employee Ezell her (Hunt's) dissatisfaction with the Union.

1. There appears to be no dispute concerning the material facts underlying this case. The Company, Union, and Board stipulated to most of the relevant facts. The few facts not stipulated to are derived from the record.

2. See *Struksnes Constr. Co., Inc.*, 165 N.L.R.B. 1062 (1967). *Struksnes* lays out the procedural safeguards for a lawful poll. None of the parties have objected to the polling on procedural grounds.

(5) Boyd overheard Unit employees generally complaining about the Union, particularly about the health insurance plan.

(6) In or around January 1991, Boyd overheard Unit employees complaining about an increase in Union dues, which became effective January 1, 1991, as well as complaining generally that Union agents were not around, and the Union was not doing anything for them, so why should their dues increase.

A poll was conducted by an independent third party on January 25, 1991. The poll yielded two votes favoring Union representation and five votes against representation. Three employees abstained. Following this poll, the Company notified the Union that it would no longer be recognized as the exclusive representative of the employees. The Company refused to engage in further collective bargaining negotiations, implemented a new health insurance plan, and ceased making contributions to the Union's Welfare Fund.

The Union filed a charge against the Company. The General Counsel of the NLRB issued a complaint and notice of hearing, alleging that the Employer had violated Sections 8(a)(1) and (5) of the National Labor Relations Act. 29 U.S.C. § 158(a)(1) and (5).[3] All parties filed a stipulation of facts and a motion to transfer the case to the Board. The Board approved the stipulation, transferred the proceeding to itself, and delegated its authority to a three-member panel.

The Board found that the Company violated Sections 8(a)(1) and (5) of the Act by: 1) polling the employees without sufficient evidence of lack of union support; 2) refusing to bargain with the Union; 3) implementing a health insurance plan without consultation with the Union; and 4) ceasing contributions to the Union Welfare Fund.

The Company requests that set aside the decision and order of the Board, arguing that (1) the Board used the wrong standard to

---

**3.** Title 29 U.S.C. §§ 158(a)(1) and (5) provide: It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title; . . . .

determine whether a company's polling of its union-member employees was lawful; and (2) evidence existed indicating a loss of union support sufficient to justify the polling.

## ANALYSIS

I. *Legal Standard for Employer Polling of Union Employees*

### A. Standard of Review

 Decisions of the NLRB will be upheld if its findings of fact are supported by substantial evidence and if it has correctly applied the law. *NLRB v. General Truck Drivers, Local No. 315,* 20 F.3d 1017, 1021 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994). The court of appeals defers to the NLRB's reasonable interpretation and application of the National Labor Relations Act. *Id.*

### B. Discussion

The Company points out that the Board stated in its decision that the issue was "whether [the Employer] had sufficient objective evidence to support a reasonable doubt of the Union's *continued majority status* and thus warrant the polling of the employees." ER, tab 7, at 5 (emphasis added). In framing the issue in this manner, the Board explicitly referred to the rule set forth by the NLRB in *Texas Petrochemicals Corp.,* 296 N.L.R.B. 1057, 1989 WL 224426 (1989), *modified,* 923 F.2d 398 (5th Cir.1991). The Board stated that the identical standard applied for justifying both an employer's polling of its employees and an employer's direct withdrawal of recognition of a union.

The Company points out, however, that the correct standard for determining the lawfulness of a *Struksnes* poll in the Ninth Circuit is set out in *Mingtree Restaurant, Inc. v. NLRB,* 736 F.2d 1295 (9th Cir.1984). In *Mingtree,* we distinguished between the re-

---

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

quirements for taking a *Struksnes* poll and those required for directly withdrawing recognition from a union. In *Mingtree* we stated:

> This court has approved the use of polls complying with the *Struksnes* safeguards as a gauge of employees' union sentiment.... The Fifth and Sixth Circuits have held that if the poll is conducted in accordance with *Struksnes,* the employer may poll its employees on a lesser showing of objective evidence.... We therefore hold, as did the Fifth and Sixth Circuits, that as long as the employer complies with the *Struksnes* conditions and procedural safeguards, it may poll its employees to determine their union sentiment if it has substantial, objective evidence of *a loss of union support,* even if that evidence is insufficient by itself to justify withdrawal of recognition, and if it has given the union notice of the time and place of the poll.

736 .F.2d at 1298–99 (emphasis added; citations omitted). The Company argues that rather than applying the less burdensome *Mingtree* standard requiring substantial, objective evidence only of a loss of union support, the Board demanded substantial, objective evidence of the Union's loss of *majority* support.

■ The Company is mistaken. While the Board's original formulation of the issue may have been stated in terms of the *Texas Petrochemicals* decision, the Board goes on in its decision to recognize the "loss of support" standard adopted by the Ninth Circuit and explicitly finds that its decision comports with that standard:

> As the [Company] further notes, however, three circuit courts of appeals have held that the objective evidence necessary to justify conducting a poll, although it must be substantial, need not meet the high standard necessary for withdrawal of recognition. Without addressing the merits of this "substantial loss of support" standard favored by these circuits, we find that the [Company's] evidence fails also under

this less-rigorous test because it does not manifest the requisite "substantial" showing of loss of support.

ER, tab 7, at 7 (citations omitted). While the Board may favor the *Texas Petrochemicals* standard, it did not fail to apply the standard applicable in the this circuit.

## II. *Sufficiency of the Evidence*

### A. Standard of Review

■ Factual decisions by the board will be upheld if supported by substantial evidence. *General Truck Drivers,* 20 F.3d at 1021.

### B. Discussion

The Board, citing *Destileria Serrales, Inc.,* 289 N.L.R.B. 51, 1988 WL 214114 (1988), *enforced,* 882 F.2d 19 (1st Cir.1989), and *Sofco, Inc.,* 268 N.L.R.B. 159, 1983 WL 24722 (1983), argues that general statements of employee dissatisfaction with the quality of union representation are insufficient to justify an employer's action against the union whether it be polling or direct withdrawal. In *Destileria,* the Board held that general statements that employees are "dissatisfied" with their union and its past performance do not indicate a "current desire to be rid of Union representation." 289 N.L.R.B. 51, 1988 WL 214114, at *2.

The Board cites various cases which support the premise that "employee statements of dissatisfaction with a union are not deemed the equivalent of withdrawal of support for the union as the exclusive bargaining representative." *Briggs Plumbingware, Inc. v. NLRB,* 877 F.2d 1282, 1288 (6th Cir.1989).[4] While none of the cases cited by the Board involve the issue of employer polling but rather involve the more drastic step of direct withdrawal of union recognition, these decisions do indicate that "dissatisfaction with quality" statements are generally insufficient to justify any unilateral action on the part of an employer against a union.

The Board found: "Here, all but one of the employee statements advanced to support the poll are mere expressions of dissatisfac-

---

4. *See also Cornell of Cal., Inc.,* 222 N.L.R.B. 303, 306, 1976 WL 6598 (1976), *enforced,* 577 F.2d 513, 516 (9th Cir.1978); *N.T. Enloe Memorial Hosp. v. NLRB,* 682 F.2d 790, 795 (9th Cir.1982); and *NLRB v. Tahoe Nugget, Inc.,* 584 F.2d 293, 305–06 (9th Cir.1978), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979).

tion with the *quality* of representation, not 'the claimed desire of these employees to be rid the union.'" Further, the Board observed that all but two of the statements relied upon by the Company failed to qualify as "'"objective, identifiable acts" [that] ... can form the basis for an employer's doubts' like those the Board has found may qualitatively satisfy withdrawal of recognition." (citing *Sofco, Inc.*, 268 N.L.R.B. at 160). It concluded that the Company did not have sufficient evidence of loss of union support to justify its polling.

## CONCLUSION

We conclude that the Board applied the correct legal standard in determining whether the Company's polling of its employees was lawful and that the Board's decision that the Company failed to satisfy that standard was supported by substantial evidence. Given the content of the vast majority of the statements as expressions of mere "dissatisfaction," and given the indefinite nature of the statements, the Board found that the evidence was on its face insufficient to justify any good faith belief in a loss of union support. We cannot say that the decision of the Board was not supported by substantial evidence.

Since the initial polling was not justified, it follows that the Company's subsequent actions against the Union were also unfair labor practices. We, therefore, deny the petition to set aside the Board's order and we grant the Board's application for enforcement.