# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 10, 2014      Decided September 18, 2015

No. 14-1047

PACIFIC COAST SUPPLY, LLC, DOING BUSINESS AS ANDERSON
LUMBER COMPANY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 14-1081

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Stephen Thomas Davenport Jr.* argued the cause and filed
the briefs for petitioner.

*Valerie L. Collins*, Attorney, National Labor Relations
Board, argued the cause for respondent. With her on the brief
were *Richard F. Griffin*, *Jr.*, General Counsel, *John H.
Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy
Associate General Counsel, and *Elizabeth Heaney*, Supervisory
Attorney.

Before: GARLAND, *Chief Judge*, and GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  Anderson Lumber Company[1] petitions for review of a determination by the National Labor Relations Board that Anderson unlawfully withdrew recognition from a union.  For the reasons set forth below, we deny the company's petition for review and grant the Board's cross-application for enforcement.

I

Anderson Lumber is a lumber supply company located in North Highlands, California.  Since the late 1960s, it has recognized and bargained with Chauffeurs, Teamsters, and Helpers Local 150, International Brotherhood of Teamsters. The union represents a fifteen-employee bargaining unit that includes material handlers and drivers.

After the parties' most recent collective bargaining agreement expired on February 28, 2012, the two sides began bargaining for a successor agreement.  On July 20, ten days before a second scheduled bargaining session, Anderson Lumber's labor consultant contacted the union's business agent and advised him that the company thought the union lacked majority support among the employees.  Thereafter, Anderson Lumber unilaterally withdrew its recognition from the union.  It is undisputed that, in so doing, the company relied solely on

---

[1] The petitioner is incorporated under the name Pacific Coast Supply, LLC and does business as Anderson Lumber Company.  The parties refer to the petitioner as the latter.  To avoid confusion, we do so as well.

one- or two-sentence, handwritten statements from eight of the fifteen members of the unit.  The statements were written in English.  Five of the eight later testified that they spoke or wrote only a little English; some had the assistance of a coworker who drafted the statements in English and translated them into Spanish.  *Pacific Coast Supply, LLC*, 360 NLRB No. 67, at 4 n.6 (Mar. 24, 2014).

The union filed an unfair labor practice charge, and an Administrative Law Judge (ALJ) subsequently concluded that the company had violated sections 8(a)(5) and (1) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(5) & (1), by unlawfully withdrawing recognition from the union.  As the ALJ explained, the seminal decision of the National Labor Relations Board (NLRB) in *Levitz Furniture Co.*, 333 NLRB 717 (2001), bars an employer from withdrawing recognition from an incumbent union unless it can show, by a preponderance of the evidence, that at the time of the withdrawal the union had in fact lost the support of a majority of the unit employees.  *Pacific Coast*, 360 NLRB No. 67, at 5; *see Levitz*, 333 NLRB at 725.  Because the employer relied exclusively on the written statements of eight of the fifteen unit employees, the ALJ held that it bore the burden of proving that each of the eight statements showed that the employee in question no longer supported union representation.  *Pacific Coast*, 360 NLRB No. 67, at 5.

Focusing on the statements of just four of the employees, the ALJ found that they did not show, by a preponderance, "that those employees no longer wish to be *represented by* the Union," but only that they no longer wanted to be *members of* the union.  *Id.* at 3, 6 (emphasis added).  The four statements were as follows:

1. I resign from [the Union]. Miguel Hernandez.

2. I Mark A. Rocha do not wish to be a Union member.

3. I Sandeep Singh employee of Anderson Lumber wish to get out of the Union.

4. Chris if it is all possible I Donald Davis would like to exit the union. This is due to the union not doing any services for the cost that they are charging.

J.A. 43-44, 46, 48. Because the employer had to prove that all eight employees did not support union representation, the ALJ's findings regarding these four were (more than) sufficient to warrant the finding of an unfair labor practice. She therefore concluded that it was unnecessary to determine the meaning of the remaining four statements.

Anderson Lumber filed exceptions with the Board. The Board held "that [Anderson] violated [the NLRA] by withdrawing recognition from the Union . . . because the statements submitted by employees Davis, Hernandez, Rocha, and Singh did not show that they no longer wanted the Union to represent them for the purposes of collective bargaining." *Pacific Coast*, 360 NLRB No. 67, at 1 n.1. NLRB Member Johnson concurred in the determination that Anderson violated the Act, but did so in reliance on the statements of only two of the employees, Hernandez and Rocha, which "explicitly refer only to union *membership* and, therefore, under extant Board law are insufficient to support the conclusion that they did not want to be represented by the Union." *Id.* Finally, having found that Anderson Lumber committed an unfair labor practice, the Board imposed a remedial order that, inter alia, requires Anderson Lumber to recognize and bargain with the union.

Anderson now petitions for review, arguing that its withdrawal of recognition was lawful under *Levitz*. The Board cross-applies for enforcement of its order.

## II

Section 8(a)(5) of the Act requires an employer to recognize and bargain with the labor organization chosen by a majority of its employees.[2] Under longstanding Board precedent, when a union is recognized as the collective-bargaining representative of a unit of employees, that union is entitled to a presumption that it enjoys the support of a majority of the represented employees. *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 785-87 (1996). The presumption of majority status is irrebuttable during the term of a collective-bargaining agreement, up to three years. Thereafter, the presumption becomes rebuttable. *Id.* at 786; *McDonald Partners, Inc. v. NLRB*, 331 F.3d 1002, 1004 (D.C. Cir. 2003).

One option available to an employer that questions an incumbent union's majority status is to ask the Board to conduct a Representation Management (RM) election, in which employees cast confidential votes for or against the union. 29 U.S.C. § 159(c)(1); *see Allentown Mack Sales & Serv., Inc. v.*

---

[2] Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7 of the Act]," 29 U.S.C. § 158(a)(1), which include the right to "bargain collectively through representatives of their own choosing," 29 U.S.C. § 157. An employer that violates Section 8(a)(5) also derivatively violates Section 8(a)(1). *See Exxon Chem. Co. v. NLRB*, 386 F.3d 1160, 1164 (D.C. Cir. 2004).

*NLRB*, 522 U.S. 359, 363-64 (1998). To obtain an RM election, an employer need only demonstrate "reasonable good-faith uncertainty" as to the union's continuing majority status. *Levitz*, 333 NLRB at 723 (emphasis omitted). The NLRB has "emphasize[d] that Board-conducted elections are the preferred method of testing employees' support for unions." *Id.* at 727; *see id.* at 723.

Alternatively, an employer may do what the petitioner did here: withdraw recognition unilaterally. Prior to the Board's 2001 decision in *Levitz*, NLRB precedent permitted an employer to unilaterally withdraw recognition from an incumbent union based on "good-faith doubt" about the union's majority status, *see id.* at 717 (citing *Celanese Corp.*, 95 NLRB 664 (1951)), which the Supreme Court interpreted to permit the employer to withdraw recognition when it had a "genuine, reasonable uncertainty" regarding the union's majority status, *Allentown Mack*, 522 U.S. at 367; *see Levitz*, 333 NLRB at 717. After *Levitz*, "doubt" or "uncertainty" is no longer enough. Now, an employer may not "withdraw recognition unless it can prove that an incumbent union has, in fact, lost majority support." *Levitz*, 333 NLRB at 723. As the Board elaborated:

> We emphasize that an employer with objective evidence that the union has lost majority support . . . withdraws recognition at its peril. If the union contests the withdrawal of recognition in an unfair labor practice proceeding, the employer will have to prove by a preponderance of the evidence that the union had, in fact, lost majority support at the time the employer withdrew recognition.

*Id.* at 725; *see Highlands Hosp. Corp. v. NLRB*, 508 F.3d 28, 31-32 (D.C. Cir. 2007); *Flying Food Grp., Inc. v. NLRB*, 471 F.3d 178, 182 (D.C. Cir. 2006). This standard, the Board said, serves

the NLRA's core policies of "promoting stable collective bargaining and employee free choice." *Levitz*, 333 NLRB at 723; *see id.* at 727; *see also Highlands Hosp.*, 508 F.3d at 31.

The standard applied by this court, however, is different. We review Board orders under the substantial evidence standard. 29 U.S.C. § 160(e); *see Monmouth Care Ctr. v. NLRB*, 672 F.3d 1085, 1089 (D.C. Cir. 2012). "[W]e will reverse for lack of substantial evidence only when the record is so compelling that no reasonable factfinder could fail to find to the contrary." *Highlands Hosp.*, 508 F.3d at 31 (internal quotation marks omitted). Or, as the Supreme Court has put it, we must affirm the Board as long as, "on th[e] record it would have been possible for a reasonable jury to reach the Board's conclusion." *Allentown Mack*, 522 U.S. at 366-67.

## III

Anderson Lumber levels three arguments against the Board's determination that it unlawfully withdrew recognition from the union. We consider those arguments below.

## A

Anderson's principal argument is that the NLRB erred in finding that four of the employee statements did not show those employees opposed continued union representation.

The Board has long maintained a distinction between an employee's desire to be *represented by* a union, and his or her desire to be *a member of* a union. Whether a union has "majority support turns on whether most unit employees wish to have union representation, not on whether most unit employees are members of a particular union." *Trans-Lux Midwest Corp.*,

335 NLRB 230, 232 (2001).[3] Only the desire of a majority not to have union representation warrants withdrawal of recognition. *See R.J.B. Knits, Inc.*, 309 NLRB 201, 206 (1992). Accordingly, the Board has long held that, for employee statements to support the showing an employer must make to warrant withdrawal, such statements "must convey an intent not to be represented by the union as distinguished from a desire not to become members for any of a number of reasons or an inability or unwillingness to pay dues." *Grand Lodge of Ohio*, 233 NLRB 143, 144 (1977).[4] Invoking that line of authority, the ALJ in this case

---

[3] *See NLRB v. Wallkill Valley Gen. Hosp.*, 866 F.2d 632, 637 (3d Cir. 1989) (noting that the Board has "observed that there is a clear distinction between union membership and majority support for collective bargaining representatives"); *Retired Pers. Pharmacy v. NLRB*, 519 F.2d 486, 491 (2d Cir. 1975) (explaining that the "issue to be decided was not how many employees belonged to the union or paid dues but rather whether a majority desired union representation for purposes of collective bargaining"); *Crete Cold Storage, LLC*, 354 NLRB 1000, 1000 n.2 (2009) ("[T]he Board's determination of 'majority support' turns on whether a majority of unit employees wish to be represented by a particular union, not on whether a majority choose to become members of that union or choose to authorize the checkoff of union dues."); *Colonna's Shipyard*, 293 NLRB 136, 140 (1989) ("[I]t is . . . well settled that resignation from or failure to acquire union membership does not support an inference of rejection of union representation."); *see also NLRB v. Carmichael Constr. Co.*, 728 F.2d 1137, 1140 (8th Cir. 1984).

[4] *See Premium Foods, Inc. v. NLRB*, 709 F.2d 623, 631 (9th Cir. 1983) (holding that employees' requests for withdrawal cards, even if such requests indicated that the employees no longer wished to be members of the union, did "not necessarily indicate that [they] no longer wish to be represented by it"); *Retired Pers. Pharmacy*, 519 F.2d at 490 ("[A] disinclination to join the union does not imply opposition to the union as bargaining representative."); *R.J.B. Knits*, 309 NLRB at 206 ("Here, the statements made by the employees

noted that "[t]he Board has held for over 40 years that 'there is no necessary correlation between membership and the number of union supporters since no one could know how many employees who favor union bargaining do not become or remain members thereof.'" *Pacific Coast*, 360 NLRB No. 67, at 6 n.9 (quoting *Terrell Mach. Co.*, 173 NLRB 1480, 1481 (1969), *enf'd*, 427 F.2d 1088 (4th Cir. 1970)); *accord DaNite Holdings, Ltd.*, 356 NLRB No. 124, at 6 (Mar. 31, 2011).

1. Applying this well-settled law, the Board concluded that Anderson Lumber failed to meet its burden of proving that, at the time it withdrew recognition, a majority of the fifteen unit employees had rejected union representation. More specifically, the Board found that four of the eight employee statements upon which Anderson relied "did not show that [those employees] no longer wanted the Union to represent them for the purposes of collective bargaining." *Pacific Coast*, 360 NLRB No. 67, at 1 n.1. Rather, the Board affirmed the ALJ's finding that the statements showed only that those employees did not want to be union members. *See id.* at 1.

Anderson Lumber "does not dispute that the Davis, Singh, Rocha, and Hernandez letters are ambiguous" with respect to whether their authors wanted the union to continue to represent

---

establish only that they did not wish to become union members and/or to pay union dues. . . . [S]uch assertions do not establish that the employees are not interested in being represented by the Union."); *H&N Fish Int'l*, No. 20-CA-30480, 2003 WL 21353898 (NLRB Div. of Judges May 28, 2003) (concluding that the words of a petition, stating that the employees "Want to Withdraw From the Union," "at best convey . . . that the [employees] wanted to withdraw their membership from the Union rather tha[n] indicating they no longer wished to be represented by the Union"); *see also Pioneer Inn Assocs. v. NLRB*, 578 F.2d 835, 840 (9th Cir. 1978).

them. Anderson Br. 26. To the contrary, it insists that each statement is "*inherently ambiguous* because it could mean *either* that the employee does not want to pay Union dues but still wants the Union to represent him (as the ALJ found), *or* that the employee does not want to be a Union member because he does not support the Union." *Id.* at 37 (emphasis in brief). In Anderson Lumber's view, however, the better interpretation of the statements is that they are statements of non-support. *Id*. at 38.

The problem with Anderson's argument is that it is aimed at the Board's standard of review, not ours. As we have explained, the court's job is not to determine whether the employer was right that the better interpretation is that the employees wanted no representation at all. Our job is only to determine whether the Board was at least reasonable in concluding otherwise. *See Allentown Mack*, 522 U.S. at 366-67; *see also NLRB v. Seaport Printing & Ad Specialties, Inc.*, 192 F. App'x 290, 290 (5th Cir. 2006) (finding substantial evidence to support the Board's determination of unlawful withdrawal under *Levitz* noting, "[t]hat the Board may have interpreted ambiguous facts and statements by employees differently from this court is within its role as factfinder"). In short, we can overturn the Board only if it was *unreasonable* for it to read all four of the statements as referring to union membership rather than union representation. We cannot make such a determination.

As the ALJ explained, each of the four statements expressly mentioned only union *membership* or remaining in the union. None mentioned continued union *representation*:

> 1. I resign from [the Union]. Miguel Hernandez.
>
> 2. I Mark A. Rocha do not wish to be a Union member.

> 3.  I Sandeep Singh . . . wish to get out of the Union.
>
> 4.  I Donald Davis would like to exit the union.  This is due to the union not doing any services for the cost that they are charging.

*Pacific Coast*, 360 NLRB No. 67, at 4-6.  Even if one reasonable interpretation of these statements is that the employees wanted to end the union's role as bargaining representative, surely Anderson Lumber is correct that they could be read the other way as well.  *See* Anderson Br. 37, 40-41.  And, given the statements' focus on membership rather than representation, it was not *unreasonable* for the Board to read them that other way, and thus to conclude that the employer did not meet its burden of showing that the employees wanted to end representation.

Anderson raises particular interpretative arguments about each of the four statements.  With respect to Miguel Hernandez, Anderson argues that we should read his statement more broadly than it is written because he is "a laborer who d[oes] not read or write English."  *Id.* at 40.  We think this cuts the other way.  Hernandez's lack of facility with English renders the meaning of his English-language statement, which is itself textually ambiguous, even more so.

With respect to Mark Rocha, Anderson maintains that his statement, "I do not wish to be a Union member," shows "that he did not support the Union" because he "was a new hire who had not yet joined the Union."  Anderson Br. 39.  We do not see why the fact that Rocha was a new hire makes a difference, either as a matter of textual construction or of labor law.  *See, e.g.*, *Retired Pers. Pharmacy*, 519 F.2d at 490 ("[D]isinclination to join the union does not imply opposition to the union as bargaining representative."); *R.J.B. Knits*, 309 NLRB at 206 (holding that employees' statements that, inter alia, they would

"rather quit than join the union" were insufficient to "establish that the employees [were] not interested in being represented by the Union"); *Grand Lodge of Ohio*, 233 NLRB at 144 (employee expressions of antiunion sentiment "must convey an intent not to be represented by the union as distinguished from a desire not to become members for any of a number of reasons or an inability or unwillingness to pay dues").

With respect to Sandeep Singh, Anderson argues that his statement, "I . . . wish to get out of the union," is akin to an employee statement in *Sofco, Inc.*, 268 NLRB 159 (1983), which said, "I sure hope you guys help us in getting out from under this union." *Id.* at 159 n.4. In *Sofco*, the Board found that statement supported the employer's "good-faith, reasonably grounded doubt of the Union's continued majority status." *Id.* at 160.

Anderson Lumber's reliance on *Sofco* has two flaws. First, the Board's finding in *Sofco* was based not only on the single quoted statement, but also on statements of union opposition made by all but one employee, including statements that the employees wanted "to do away with the union." *Id.* at 159, 164. The Board also noted numerous anti-union posters hanging in the workplace, including a poster counting down the days until the end of union representation. *Id.* at 159. Second, and more important, *Sofco* was decided during the period when "good faith doubt" was sufficient to warrant withdrawal. After *Levitz*, the test is no longer "doubt" but preponderance of the evidence that a majority of the employees actually wanted to end union representation. Where the most that can be said about a statement is that one reading of it may give rise to "doubt" about a union's support, it is not unreasonable for the Board to read it the other way.

Finally, with respect to Donald Davis' statement, Anderson focuses on the portion that reads, "this is due to the union not

doing any services for the cost that they are charging." Anderson Br. 38. The Board, however, has historically read statements of dissatisfaction with union services or with the cost of union dues as indicating a desire to end union membership rather than representation. *See Wagon Wheel Bowl, Inc. v. NLRB*, 47 F.3d 332, 335 (9th Cir. 1995) (noting that the Board has "indicate[d] that 'dissatisfaction with quality statements' are generally insufficient to justify any unilateral action on the part of any employer against a union"); *Briggs Plumbingware, Inc. v. NLRB*, 877 F.2d 1282, 1288 (6th Cir. 1989) ("[S]tatements of dissatisfaction with a union are not . . . the equivalent of withdrawal of support for the union . . . .").

Anderson further argues that Davis' language resembles one of the statements in *Allentown Mack Sales & Service, Inc. v. NLRB* -- an employee's statement that "he was not being represented for the $35 he was paying" -- which the Supreme Court said the Board should not have "entirely ignored." 522 U.S. at 369. The two cases are plainly different. Unlike the employee statement in *Allentown Mack*, which complained about the union's "represent[ation]," Davis' statement spoke only of his desire to "exit" the union. And unlike in *Allentown Mack*, in this case the Board did not "entirely ignore" Davis' statement. It merely construed it differently than Anderson Lumber did.

But even if these distinctions were unpersuasive, Anderson's invocation of *Allentown Mack* would still do it no good. In *Allentown Mack*, the Court concluded that the employee's statement was "simply an expression of dissatisfaction with the union's performance," which could be interpreted in *either* of two ways: it could "reflect the speaker's desire to save his $35 and get rid of the union," but it also "could reflect the speaker's desire that the union represent him more effectively." *Id.* (emphasis omitted). That, the Court said,

was enough to "engender an *uncertainty* whether the speaker supported the union" -- which at the time was sufficient to warrant withdrawal of recognition. *Id.* As we have explained, however, after *Levitz* the test is no longer "uncertainty" about union support but rather preponderance of the evidence that the employee(s) actually wanted to end union representation. And once again, where the most that can be said of a statement is that it is uncertain and can be read in either of two ways, it is not unreasonable for the Board to read that statement in either one of those ways.

Although we have addressed each of the four employees' statements separately, we note that, even if Anderson Lumber could persuade us that the NLRB's reading was unreasonable with respect to any one statement, that would be insufficient for Anderson to win the day. Anderson's decision to withdraw recognition relied on written statements of only eight of the fifteen unit employees. Thus, to prove a lack of majority support before the NLRB, it had to prove that each of the eight statements showed that the employee in question rejected union representation. And to succeed in this court, it must show that the NLRB's construction of each of the four statements upon which the Board independently relied was unreasonable. In light of the long line of Board cases distinguishing between union membership and union representation, and our obligation to defer to the Board's understanding of the workplace, *see Tradesmen Int'l, Inc. v. NLRB*, 275 F.3d 1137, 1141 (D.C. Cir. 2002), we cannot say that the Board was unreasonable in concluding that Anderson failed to meet its *Levitz* burden.

2. Anderson Lumber maintains that this case is different from others in the line of authority just referenced because Anderson operated under a union security agreement that required all employees to be members of the union. Anderson notes that California is not a "right to work" state and that

California does not bar such union shop agreements.[5] In these circumstances, Anderson insists, when the employees said they did not want to be members of the union, they must have been saying that they wanted to abolish the union. Otherwise, Anderson maintains, they were effectively firing themselves because the union security agreement required all employees to become dues-paying members of the union within 31 days of being hired.

The problem with this argument is that, as the ALJ explained, "it rests on a misapprehension of the law." *Pacific Coast*, 360 NLRB No. 67, at 6. The Supreme Court, this court, and the Board have all held that, even with a union security agreement in place, an employee cannot be fired simply for refusing to be a "member" of a union.[6] The only obligation that can be imposed is that the employee pay core financial obligations for collective bargaining, grievance adjustment, and contract administration -- not full union dues. *See* cases cited *supra* note 6. Indeed, the Board requires that, "before a union seeks to obligate an employee to pay fees and dues under a

[5] *See Int'l Union, UAW v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1143 n.2 (D.C. Cir. 1978) ("Section 14(b) of the National Labor Relations Act, 29 U.S.C. § 164(b) . . . , permits states to enact laws prohibiting union-security agreements that require membership in a labor union as a condition of employment. Such laws are popularly known as 'right to work' laws.").

[6] *See Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 36-38, 43 (1998); *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 744-45 (1988); *NLRB v. Gen. Motors*, 373 U.S. 734, 743-44 (1963); *Int'l Union of Elec., Elec., Salaried, Machine & Furniture Workers v. NLRB*, 41 F.3d 1532, 1534-35 (D.C. Cir. 1994); *Local Union 749, Int'l Bhd. of Boilermakers v. NLRB*, 466 F.2d 343, 345 (D.C. Cir. 1972); *Cal. Saw & Knife Works*, 320 NLRB 224, 233 (1995).

union-security clause, the union should inform the employee that he has the right to be or remain a nonmember and that nonmembers have the right [inter alia] to object to paying for union activities not germane to the union's duties as bargaining agent and to obtain a reduction in fees for such activities." *Cal. Saw & Knife Works*, 320 NLRB 224, 233 (1995). Accordingly, the only necessary consequence of an employee's resignation from the union is not termination of employment but rather a reduction in the amount of money that is deducted from his or her paycheck.

3. Contrary to Anderson's concerns, nothing the Board did in this case altered the *Levitz* rule that an employer must show, by a preponderance of the evidence, that the union had actually lost majority support. It did not create a "clear statement" or "per se" rule, requiring employees to expressly state that they no longer want the union to represent them. Instead, the Board merely found that four of the eight employee statements upon which Anderson Lumber relied as its sole ground for withdrawal of recognition failed to establish by a preponderance of the evidence that those particular employees wanted to end union representation altogether rather than merely end their own membership in the union. And this court holds nothing more than that the Board was not unreasonable in making that finding.[7]

---

[7] The petitioner takes issue with the ALJ's finding that the statements "clearly state a desire to withdraw from membership in the Union." *Pacific Coast*, 360 NLRB No. 67, at 5. On appeal to the NLRB, the Board merely agreed that Anderson had unlawfully withdrawn recognition "because the statements submitted by [the four employees] did not show that they no longer wanted the Union to represent them for the purposes of collective bargaining." *Id.* at 1 n.1. That explanation states the ground upon which the Board affirmed the

B

Anderson Lumber's second argument is that the NLRB wrongly barred it from bolstering its position with post-withdrawal evidence. Anderson does not dispute that, at the time it withdrew recognition from the union, it relied solely on the written statements of the eight employees. At the ALJ hearing, however, it also proffered testimony from those eight employees that their intent had been to convey a desire that the union no longer represent them. In addition, it offered further affidavits from three of those employees -- none of whom had authored any of the four statements upon which the Board ultimately relied. Those affidavits, Anderson maintains, confirm its position that the union had in fact lost majority support at the time it withdrew recognition.

The ALJ ruled that Anderson's post-withdrawal evidence was irrelevant to the question of whether the withdrawal was unlawful. "[T]his evidence," the ALJ said, "was acquired long after withdrawal of recognition, was not relied on by [Anderson] in withdrawing recognition, and is not relevant for that reason." *Pacific Coast*, 360 NLRB No. 67, at 7.[8]

_____

ALJ's decision, and to the extent Anderson sees the two rulings as inconsistent, the Board's decision governs.

[8] "Moreover," the ALJ said, "given the leading format of the offer of proof question[,] . . . I would be unwilling to accord the responses much weight even were there no objection to the questions." *Pacific Coast*, 360 NLRB No. 67, at 7. *See Retired Pers. Pharmacy*, 519 F.2d at 491 (affirming an ALJ's decision not to permit an employer to call employees to testify about whether they supported the union as of the withdrawal date because the employer "would clearly have been putting pressure on them to answer favorably" and "[i]f such questioning were allowed, management could withdraw recognition without basis and successfully defend itself by showing a lack of

Anderson Lumber argues that the preclusion of post-withdrawal evidence contradicts the text and rationale of *Levitz*. It notes, for example, that *Levitz* said that "an employer can defeat a post-withdrawal refusal to bargain allegation if it shows, as a defense, the union's actual loss of majority status." Anderson Br. 16 (quoting *Levitz*, 333 NLRB at 717); *id.* at 18, 23. And it stresses the Board's statement that the burden on the employer is to establish loss of majority support by a preponderance of "*all*" the evidence. *Id.* at 19 (emphasis in brief) (quoting *Levitz*, 333 NLRB at 725 n.49). "All" the evidence, Anderson maintains, includes post-withdrawal evidence. Barring such evidence, it contends, defeats *Levitz*'s intention to replace the former "good faith doubt" test "with a test which is based on whether the employer can 'prove' at trial that a loss of majority support 'actually' occurred 'in fact.'" *Id.* at 18.

The NLRB reads the text and rationale of *Levitz* differently. *See Pacific Coast*, 360 NLRB No. 67, at 7 (ALJ Op.) (noting that the Board has interpreted *Levitz* as rejecting the "use of after-acquired evidence regarding employee sentiment"). In defense of its view that *Levitz* supports requiring evidence of loss of majority support at the time of the withdrawal, the Board cites the case's statement that, under its rule, "employers will

---

union support which in fact resulted not from employee dissatisfaction but rather from the withdrawal of recognition and subsequent proceedings"); *see also Int'l Union, UAW v. NLRB*, 392 F.2d 801, 807-08 (D.C. Cir. 1967) (expressing skepticism of "employees testifying under the eye of the company officials about events which occurred almost a year before"); *Stratford Visiting Nurses Ass'n*, 264 NLRB 1026, 1026 (1982) ("[S]uch testimony is highly unreliable for it requests an employee to relate several months-old uncommunicated states of mind, knowing that the employer's defense rests on his or her reply.").

[now] be likely to withdraw recognition only if *the evidence before them* clearly indicates that unions have lost majority support." NLRB Br. 24 (emphasis added) (quoting *Levitz*, 333 NLRB at 726); *id.* at 23.[9] The NLRB also argues that "[t]he Company's proffered interpretation . . . leads to the incongruous result that an employer could withdraw recognition even where the evidence before it does not demonstrate that a union had actually lost majority status, in the hope that it would unearth evidence in time for the unfair labor practice hearing." *Id.* at 24. "Such a precipitous termination or disruption of an existing bargaining relationship," the Board argues, "is contrary to *Levitz*'s stated goal of allowing collective bargaining relationships 'the opportunity to succeed without continual baseless challenges.'" *Id.* (quoting *Levitz*, 333 NLRB at 723).

*Levitz* alone does not resolve the question for us. After-acquired evidence was not at issue in that case, and hence the Board did not directly address it. *Accord* Oral Arg. Recording at 19:28-40 (acknowledgment by Anderson counsel that *Levitz* did not address the issue either way). There are, as quoted above, snippets of language to support either position. And there are, as also noted above, policy arguments on both sides. We, however, must "give deference to [an agency's] interpretations of its own precedents." *Colo. Interstate Gas Co. v. FERC*, 599 F.3d 698, 703 (D.C. Cir. 2010); *see Glob.*

---

[9] *See also Levitz*, 333 NLRB at 724 ("If a majority of the unit employees *present evidence* that they no longer support their union, their employer may lawfully withdraw recognition." (emphasis added)); *id.* at 725 ("[W]e hold that an employer may . . . unilaterally withdraw recognition, only on a showing that the union has, in fact, lost the support of a majority of the employees in the bargaining unit."); *id.* ("[U]nless an employer has proof that the union has actually lost majority support, there is simply no reason for it to withdraw recognition unilaterally.").

*Crossing Telecomms., Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001); *Cassell v. FCC*, 154 F.3d 478, 483 (D.C. Cir. 1998). Likewise, policy arguments are for the Board -- not this court -- to resolve. *See Allentown Mack*, 522 U.S. at 364-66. And "[c]ourts must defer to the requirements imposed by the Board if they are rational and consistent with the Act and if the Board's explication is not inadequate, irrational or arbitrary." *Id.* at 364 (internal quotation marks and citation omitted).

More important, however, although *Levitz* does not resolve the question, the Board's subsequent decision in *Highlands Hospital Corp.* does. 347 NLRB 1404 (2006). As the ALJ in the present case noted, in *Highlands Hospital* the Board declined to "'address the sufficiency of . . . hearing testimony regarding employees' bare recollections of their sentiments for or against union representation as of [the date of withdrawal], because this evidence was not before the [employer] when it withdrew recognition.'" *Pacific Coast*, 360 NLRB No. 67, at 7 (quoting *Highlands Hosp.*, 347 NLRB at 1407 n.17). In *Highlands Hospital*, the NLRB held that the testimony of 30 nurses, who wanted to explain the reasons they signed a petition, was irrelevant because the only evidence the employer relied upon in deciding to withdraw recognition was the petition itself. *See Highlands Hosp.*, 347 NLRB at 1407 n.17, 1412-13. The Board has said the same thing in other cases as well. *See Flying Foods Grp., Inc.*, 345 NLRB 101, 155 & n.83 (2005) (holding that evidence that was obtained a year after the employer withdrew recognition was irrelevant to the lawfulness of the withdrawal of representation); *Seaport Printing & Ad Specialties*, 344 NLRB 354, 357 & n.8 (2005) (suggesting that an employer cannot rely on evidence "not known by [the employer] at the time [of the withdrawal]").

Finally, and most important from this panel's point of view, our circuit's own decision in *Highlands Hospital Corp. v. NLRB*

also resolves the question. *See* 508 F.3d at 32. As the ALJ in Anderson Lumber's case recounted, in *Highlands Hospital* we affirmed the Board's decision not to address the post-withdrawal testimony that the employer said provided additional evidence of loss of majority support. *See Pacific Coast*, 360 NLRB No. 67, at 7. "Both the Board and ALJ," we held, "refused to credit this testimony, *and for good reason*: [Highlands] had no knowledge of that corroborating evidence on the day it withdrew recognition." *Highlands Hosp.*, 508 F.3d at 32 (emphasis added). Although Anderson Lumber insists that our circuit's *Highlands Hospital* decision was wrong, that is a challenge a subsequent panel may not entertain. *See, e.g.*, *United States v. Carson*, 455 F.3d 336, 384 n.43 (D.C. Cir. 2006).[10]

C

Anderson Lumber argues that interpreting *Levitz* in the way the Board did in this case creates an impossible dilemma for an employer that thinks a majority of its employees do not support the union: it cannot withdraw recognition without risking one kind of unfair labor practice finding, yet it cannot continue to recognize the union without risking another -- continued

---

[10] Anderson also maintains that *Highlands Hospital* contradicts the Fourth Circuit's decision in *NLRB v. B.A. Mullican Lumber & Manufacturing Co.*, 535 F.3d 271 (4th Cir. 2008). That is not correct. In *Mullican Lumber*, all of the evidence upon which the employer relied in withdrawing representation was acquired prior to withdrawal, and the court held that this evidence demonstrated (by a preponderance) that the employees no longer supported the union. *Id.* at 277-78, 281. The opinion does contain dicta to the effect that, if the General Counsel had acquired certain kinds of post-withdrawal evidence, that evidence would also be relevant. *Id.* at 282-83. But dicta does not a circuit split make.

recognition of a union known to have lost majority support.[11] This, however, is precisely the "no-win situation" argument that the Board rejected in *Levitz*. *Levitz*, 333 NLRB at 726. As *Levitz* recognized, raising the bar for unilateral withdrawal of recognition does mean that an employer "withdraws recognition at its peril." *Levitz*, 333 NLRB at 725; *see Flying Food Grp.*, 471 F.3d at 182. But the Board intended that result, expecting that it would create less temptation for employers to act unilaterally. *Levitz*, 333 NLRB at 726. The Board explained that the supposed "dilemma . . . is more apparent than real" because the employer's ability to petition for an RM election provides it with a "safe harbor." *Id.* An employer with reasonable good-faith uncertainty regarding the union's continuing majority status can petition for such an election, and the Board "would not find that the employer [committed an unfair labor practice] by failing to withdraw recognition while the representation proceeding was pending." *Id.*

Anderson Lumber did not seek safe harbor here. Instead, it proceeded, at its peril, to unilaterally withdraw recognition. We conclude that the Board was not unreasonable in finding that, in so doing, Anderson ran aground on the shoals of an unfair labor practice.[12]

---

[11] *See Levitz*, 333 NLRB at 720 ("Section 8(a)(5) makes it unlawful for an employer to refuse to bargain with the representative of a majority of his employees. Conversely, . . . the Board has held that an employer violates Section 8(a)(2) by . . . continuing to recognize an incumbent union that it knows has lost majority support." (footnotes omitted)).

[12] Anderson briefly makes two arguments for why the Board's remedial order was inappropriate even if the company did commit an unfair labor practice. Anderson's first argument -- that the Board failed to sufficiently explain why such an order was necessary -- is beyond our jurisdiction because Anderson did not raise it with the

23

IV

For the foregoing reasons, Anderson Lumber's petition for review is denied, and the Board's cross-application for enforcement of its order is granted.

*So ordered.*

---

Board. *See* 29 U.S.C. § 160(e); *Flying Food Grp.*, 471 F.3d at 185-86. Anderson's second argument is that, in contravention of the Fourth Circuit's decision in *Mullican Lumber*, 535 F.3d at 283, the NLRB's General Counsel violated his duty not to seek enforcement of an order requiring an employer to bargain with a union that Counsel knows no longer represents a majority of the employees. The NLRB agrees that its Counsel should not seek enforcement under such circumstances, but represents that Counsel did not have evidence giving him such knowledge. NLRB Br. 37. There is certainly no evidence in this case like there was in *Mullican Lumber* (decertification slips purportedly signed by a majority of the employees), and we have no basis for doubting the NLRB's representation.