# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 20-1469**

**September Term, 2021**

FILED ON: DECEMBER 10, 2021

NEW YORK PAVING, INC.,
     PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
     RESPONDENT

Consolidated with 21-1003

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

Before: WILKINS and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

## J U D G M E N T

This petition for review and cross-application for enforcement of a National Labor Relations Board order were presented to the court and briefed and argued by counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons set out below, it is

**ORDERED** that the petition for review be **DENIED** and the cross-application for enforcement be **GRANTED**.

New York Paving, Inc. performs asphalt and concrete paving services for New York City utility providers Consolidated Edison ("Con Edison") and National Grid. New York Paving performs Con Edison work pursuant to a contract with Hallen Construction Company. The work consists in repairing streets and sidewalks after the utility has performed work underground. New York Paving's employees are represented by two unions: Construction Council Local 175, Utility Workers Union of America, AFL–CIO ("Local 175"), and Highway Road and Street Construction Laborers Local Union 1010, District Council of Pavers and Builders, Laborers International Union of North America, AFL–CIO ("Local 1010"). Local 175 traditionally performs New York Paving's asphalt paving, whereas Local 1010 performs concrete paving.

1

This case involves three types of temporary asphalt work: emergency keyhole, Code 92, and Code 49. Emergency keyhole work involves saw cutting, excavating, and backfilling a street hole with concrete, and covering the back-filled hole with a patch of temporary asphalt. Code 92 work involves covering a backfilled hole on a sidewalk with temporary asphalt so that New York Paving can operate its saws around the hole. Code 49 is like Code 92 except on streets. New York Paving performs emergency keyhole work for Hallen, Code 92 work for Hallen and National Grid, and Code 49 work for National Grid.

New York Paving used members of Local 175 to perform emergency keyhole and Code 92 work until New York Paving transferred the work to Local 1010 in 2018. New York Paving did not perform Code 49 work until summer 2018. When New York Paving began performing Code 49 work, it assigned the work to Local 1010 members. New York Paving did not bargain with Local 175 before assigning the three types of work to Local 1010.

The Board determined that New York Paving violated the National Labor Relations Act by unilaterally transferring the three types of work from Local 175 to Local 1010 without first bargaining with Local 175. 370 N.L.R.B. No. 44 (2020). New York Paving petitions for review of that decision. We conclude that New York Paving's arguments are unavailing, and we therefore deny the petition and grant the cross-petition for enforcement.

The Act makes it unlawful for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). An employer that violates Section 158(a)(5) derivatively violates Section 158(a)(1). *Pac. Coast Supply, LLC v. NLRB*, 801 F.3d 321, 325 n.2 (D.C. Cir. 2015). An employer violates Section 158(a)(5) if it makes a unilateral change to the status quo without first providing notice and an opportunity to bargain. *NLRB v. Katz*, 369 U.S. 736, 743-48 (1962). We review the Board's findings of fact for substantial evidence and its reasoning under the arbitrary and capricious standard. *Int'l Longshore & Warehouse Union v. NLRB*, 971 F.3d 356, 360 (D.C. Cir. 2020).

New York Paving first argues that the Board erred in concluding that New York Paving violated the Act by unilaterally transferring emergency keyhole work to Local 1010. New York Paving maintains that the Board's unfair labor practice charge was untimely because Local 175 had actual and/or constructive knowledge of the emergency keyhole work transfer in April or May 2018. The unfair labor practice charge was filed in January 2019, so New York Paving argues that the charge came after the Act's six-month statute of limitations expired. 29 U.S.C. § 160(b).

New York Paving must show that Local 175 had "clear and unequivocal notice" of the violation outside the limitations period. *Taylor Ridge Paving & Constr., Co.*, 365 N.L.R.B. No. 168, 2017 WL 6554390, at *4 (Dec. 16, 2017) (internal quotation marks omitted). Substantial evidence supports the Board's conclusion that New York Paving did not meet that burden. The emails relied on by New York Paving are unclear and show only that a Local 175 shop steward "observed" one incident where Local 1010 used an asphalt truck and that he "heard of two others." A235. The

2

emails do not mention emergency keyhole work. The shop steward's testimony is also not helpful to New York Paving because the shop steward admits that he did not know whether the truck was set up for emergency keyhole work or whether Local 1010 ultimately performed the work. Local 175's business manager also testified that he saw Local 1010 members performing asphalt work, but in "late 2018," not in April or May. A570-71.

New York Paving next argues that it was forced to transfer emergency keyhole work to Local 1010 due to the action of a third party — Con Edison — over which it had no control. Con Edison contracts require contractors to employ workers from unions affiliated with the Building & Construction Trades Council of Greater New York "unless otherwise agreed to by Con Edison." A302. Local 1010 is a member of the Trades Council, but Local 175 is not. New York Paving's prior contracts with Hallen for Con Edison work did not include the labor requirement, and New York Paving used Local 175 members to perform the work. But on January 9, 2018, New York Paving entered into a new contract with Hallen. The new contract included the labor requirement.

Due to the labor requirement, New York Paving used Local 1010 members for emergency keyhole work performed under the contract. New York Paving contends that Con Edison forced the transfer. But, by signing the new contract with Hallen without bargaining, New York Paving "committed itself voluntarily to two conflicting contractual obligations" — the labor requirement and its past practice of assigning emergency keyhole work to Local 175 — and cannot be excused for violating the Act. *W.R. Grace & Co. v. Loc. Union 759*, 461 U.S. 757, 767 (1983).

New York Paving also argues that the emergency keyhole work transferred was *de minimis*, and thus New York Paving did not violate the Act. Employers must bargain "before making a change to wages, hours, or other working conditions . . . only if the change is a material, substantial, and a significant one." *N. Star Steel Co.*, 347 N.L.R.B. 1364, 1367 (2006) (internal quotation marks omitted). But the Board reasonably explained why the transfer of fifteen hours of emergency keyhole work each month was unlike the single, one-month transfer of work in *North Star Steel*.

New York Paving next challenges the Board's conclusion that New York Paving violated the Act by unilaterally transferring Code 49 and Code 92 work to Local 1010. New York Paving first contends that a prior Board decision required New York Paving to assign Code 49 and Code 92 work to Local 1010. But the prior decision assigned saw cutting, excavation, and seed and sod installation work to Local 1010, not Code 49 and Code 92 work. *Highway Road & St. Constr. Laborers Local 1010*, 366 NLRB No. 174, 2018 WL 4070102, at *7 (Aug. 24, 2018). New York Paving argues that Code 49 and Code 92 are the "first and essential step in the excavation work" and thus "fall 'squarely' within" the Board's prior decision. Petitioner's Br. 53-54. But substantial evidence supports the Board's conclusion that both types of work do not occur "so close together in time" to saw cutting "as to constitute a single integrated process." A214-15.

New York Paving also challenges the Board's exclusive reliance on past practice to find that the transfer of Code 49 work violated the Act. Under Board precedent, "[a] past practice must occur with such regularity and frequency that employees could reasonably expect the 'practice' to continue

3

or reoccur on a regular and consistent basis." *Sunoco, Inc.*, 349 N.L.R.B. 240, 244 (2007). Because New York Paving did not perform Code 49 work until summer 2018, New York Paving asserts that there was no past practice of assigning Code 49 work to Local 175. But substantial evidence supports the Board's conclusion that Code 49 is "temporary asphalt work" and New York Paving had a practice of assigning all temporary asphalt work to Local 175 before January 2018. A215. Local 175 members could thus "reasonably expect" that new temporary asphalt work would be assigned to them. *See Sunoco, Inc.*, 349 N.L.R.B. at 244.

New York Paving's remaining contentions do not merit discussion and have been rejected. We therefore deny the petition for review and grant the Board's cross-application for enforcement.

\*   \*   \*

This disposition is unpublished. *See* D.C. CIR. R. 36(d). We direct the Clerk to withhold the mandate until seven days after any timely petition for rehearing or rehearing *en banc* is resolved. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

4